UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD D. SMITH, | No. C 13-310 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| K. CHAPPELL, Warden; et al., | |
| Defendants. | |

## INTRODUCTION

Floyd D. Smith, an inmate incarcerated on death row at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983, complaining about an alleged risk to his safety. The court reviewed the complaint, identified several deficiencies, and dismissed it with leave to amend. Smith then filed an amended complaint, which is now before the court for review under 28 U.S.C.§ 1915A.

## BACKGROUND

Smith alleges in his amended complaint that, on or about July 18, 2012, correctional counselors Ebert and Sword tried to have him attacked or assaulted by other inmates by presenting to the Institution Classification Committee ("ICC") their recommendation that Smith could be assigned to death row's exercise yard # 2 or # 3. Smith refused to be assigned to either of those yards and therefore was assigned to a different yard by the ICC. Smith alleges that defendants Ebert and Sword made the recommendation for his assignment to exercise yard # 2

or # 3 to retaliate "against [him] for filing a grievance against Lt. Luna for not forwarding & processing a grievance that [he] filed against defendant B. Ebert." Docket # 7 at 3. He also alleges that both Ebert and Sword "knew or should have known that [Smith] had safety concerns on the exercise yards" they recommended for him. *Id.* (He alleges that C/Os Ebert and Sword were supposed to read his central file before taking him to the ICC, and therefore saw or should have seen materials in his file from 2005 through 2008 that showed security concerns for him on yards # 2 and # 3.) Smith further alleges that he *could* have been harmed by correctional officials responding to violence *if* several things lined up, i.e., if he was assigned to either of those two yards, *and* he was present when violence erupted among the inmates, *and* prison officials responded with force. *See id.* at 3. He alleges that warden Chappelle neglected to supervise his subordinate employees to protect him. He further alleges that the recommendation that he be placed in exercise yard # 2 or # 3, where he had enemies, violated his Eighth Amendment right to be free from cruel and unusual punishment.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Eighth Amendment Allegations: The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of

inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. *See id.* at 833. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834. To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837.

The amended complaint fails to state a claim for an Eighth Amendment violation. Smith has not alleged an objectively serious condition, as his allegations plainly show that he never was sent to either allegedly dangerous exercise yard. He objected to the recommended placement, and was sent to a different yard. Smith also has not alleged the requisite mental state, as his allegations that defendants "knew or should have known" of a risk by looking at his files do not suffice to show that the defendants actually knew of the risk to his safety in the contemplated yards. The amended complaint's allegations show that, when plaintiff did object to being placed in either of those yards, prison officials sent him to a different yard.[1]

Retaliation Allegations: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The amended complaint fails to state a claim for retaliation because Smith did not allege any harm or chilling effect. "In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury." *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir.

---

[1] In dismissing the original complaint with leave to amend, the court explained that Smith had not alleged an objectively serious condition, because he had not alleged whether he actually was sent to the yard in which the danger existed. *See* Docket # 3 at 3. The court also noted that the original complaint had not adequately alleged the requisite mental state because Smith had not alleged that defendants actually knew of the risk to his safety in the contemplated yards. *Id.* Smith failed to adequately allege either prong of an Eighth Amendment claim in his amended complaint.

2000). His amended complaint plainly alleges that he did not suffer any harm: he objected to the recommended placement, and then was sent to another yard. *Compare id.* (no harm alleged where defendants did not identify the plaintiff as a snitch and thereby place him at risk of physical harm from other inmates and "despite the alleged threat of permanent placement in the SHU, Plaintiff also alleges he was released from the SHU upon being cleared of the charges after a hearing"). The amended complaint also is devoid of any fact suggesting a chilling effect. In light of the allegation that defendants "knew or should have known" of a danger if they read his file (rather than that they actually knew of a danger to him in those yards), plus the allegation that plaintiff was sent to a different yard when he objected, plus the absence of any allegation that defendants said anything suggesting they intended to retaliate, the amended complaint fails to state a plausible claim for retaliation by defendants.

## CONCLUSION

For the foregoing reasons, this action is dismissed for failure to state a claim upon which relief may be granted. Further leave to amend has not been granted because it would be futile. The facts are fully described and, even with liberal construction, the amended complaint simply does not state a claim. The clerk shall close the file.

IT IS SO ORDERED.

Dated: September 16, 2013

_____
SUSAN ILLSTON
United States District Judge

4